## Appeal of EDWARD S. VAIL BUTTERINE CO.

Docket No. 5449.    Submitted January 15, 1926.    Decided April 21, 1926.

*Robert E. Acorn, Esq.,* for the taxpayer.
*F. O. Graves, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the fiscal year ending June 30, 1920, in the amount of $1,847.88. It is alleged that certain formulae and processes for use in the manufacture of oleomargarine, paid in for $150,000 par value of stock in 1916, had an actual cash value at that time of $75,000, and that the Commissioner erred in his determination that these formulae and processes had no actual cash value at the time paid in.

### FINDINGS OF FACT.

The taxpayer is a Delaware corporation engaged in the manufacture of oleomargarine at Chicago, Ill. It was organized in September, 1916, by one Ward, Edward S. Vail, and L. E. Roberts, with an authorized capital stock of $500,000, consisting of 20,000 shares of preferred and 30,000 shares of common stock having a par value of $10 each.

Edward S. Vail had for about 28 years prior to 1916 been in the employ of various manufacturers of oleomargarine. During a greater portion of this time his duties brought him in contact with the actual manufacture of this product, with the result that he

acquired considerable knowledge as to the manufacture of butter substitutes. He acted as vice president of at least two of the companies with which he had been connected and, in some instances, acted as salesman.

In the manufacture of oleomargarine the proper use of oils, milk, salt, and of temperatures is essential. During the period hereinbefore mentioned, Vail had acquired a thorough knowledge of the processes employed in such manufacture, particularly as to the temperature at which the ingredients entering into the manufacture of this article should be mixed, and the quantity of oils, milk, and salt to be used. In connection with his activities he made various experiments. From time to time he made notes of the quantities of materials, the processes of mixing, and the proper temperature necessary at various stages in the process of manufacture.

In 1912, Vail became associated with the Carey-Vail Co. and received certain stock of that company in exchange for his agreement to take charge of the manufacture of oleomargarine and to demonstrate to the company and its employees the processes and methods known to him in the manufacture of oleomargarine. He remained with this company about one and one-half years. Prior to his connection with the taxpayer, he had never furnished any one, in writing, with the processes and formulae used by him in the manufacture of oleomargarine, nor had this process, prior to 1918, been completely reduced to writing by him.

A short time prior to the organization of the taxpayer, L. E. Roberts, a promoter, having knowledge of Vail's experience, discussed with him on many occasions the matter of their joining in the organization of a company for the manufacture of butterine. The proposition of Roberts was that he would promote the company and sell its stock upon Vail's reputation and his knowledge of the manufacture of oleomargarine. Finally, after making inquiry concerning Roberts, Vail agreed to become associated with him in the organization of such a company. The promotion of a company was accordingly undertaken. It was agreed between Vail and Roberts that a certain amount of stock should be issued to the former in exchange for his various formulae and processes in use in the production of oleomargarine, and that Vail should agree to remain with the company for at least five years and have charge of its manufacture. It was further agreed between them that one-half of the stock to be issued to Vail for his formulae and processes, and his agreement to take charge of the manufacturing end of the business, should become the property of Roberts for his services in promoting the company and selling its stock.

The first step after organization of the corporation was the acquisition of a plant for manufacturing purposes. To this end negotiations were opened with one W. H. Darlington, and after consultation between Ward, Vail, Roberts, and Darlington a building owned by the latter, which had theretofore been used as a serum plant, was acquired by the corporation for a consideration of $75,000, which the company agreed to discharge by issuing $19,000 par value of preferred stock, paying $21,000 in cash, and executing a mortgage for $35,000. With the $19,000 par value of preferred stock, $10,000 common stock was issued as a bonus. Thereupon, W. H. Darlington became president of the corporation. Thereafter, during 1916 and throughout the year 1917, L. E. Roberts and other salesmen were actively engaged in the sale of the corporation's stock to the public. In all instances the preferred stock of the corporation was sold at par and the common stock was given as a bonus, ranging from one share for each share of preferred purchased to one share of common for every two shares of preferred. In making sales of the taxpayer's stock, the experience and ability of Edward S. Vail, his knowledge of the process of manufacturing oleomargarine, and his agreement to take charge of the manufacturing end of the business were urged upon the prospective purchasers as an inducement to purchase such stock. In this connection Vail accompanied Roberts in his campaign for the purpose of explaining to prospective subscribers the prospects of success in the manufacture of oleomargarine. In a few instances a small number of shares of common stock were sold at par.

On October 2, 1916, the board of directors of the taxpayer adopted the following resolution:

WHEREAS, Edward S. Vail has proposed to assign, transfer, sell and convey to this corporation the use of certain secret formulae and processes to him known for the efficient manufacture of butterine, or oleomargarine, in consideration of the issue to him by said corporation of $150,000 of its common stock, and

WHEREAS, the right and opportunity to manufacture butterine or oleomargarine according to said formulae and processes are admitted by us to be a valuable property right and of the reasonable value of $150,000, and necessary for the business of the corporation,

Now, THEREFORE, BE IT RESOLVED: That said offer of said Edward S. Vail be accepted by the corporation, and upon a proper transfer of said property rights to said corporation said amount of stock be issued to him, that is to say, $150,000 of common stock.

On January 18, 1917, W. H. Darlington, W. L. Ephlin, L. E. Roberts, and Edward S. Vail, the directors of the corporation, entered into an agreement to the effect that they would each place the

shares of stock held by them in escrow with a trustee for a period of five years, and that they would not sell the same without first offering such stock to the parties to the agreement. They further constituted Walter L. Darlington as their attorney in fact with full power and authority to vote said shares of stock so held in escrow for the purposes of said agreement, subject to the limitation that he should vote said stock so as to carry into effect, as the policy of the company, the following:

(a) That no officer or director of the said Ed. S. Vail Butterine Company shall receive any salary, emolument or profit for the services rendered, or to be rendered by him, in the proper performance of his or their duties, until three (3) months after said company becomes possessed of and operates a plant for the production and sale of butterine and other products to be made by said company.

(b) That the said Ed. S. Vail and the said L. E. Roberts in consideration of the faithful performance by them of all the duties pertaining to the offices to be held by them, and the duties which they may be properly called upon to perform, shall receive a salary of $3,000.00 each per annum for the first two (2) years of their services, commencing from a period three (3) months subsequent to the time said company actually enters upon the manufacture and sale of butterine; $4,000.00 per annum during the third year of said service in the employ of said company, conditioned as aforesaid, upon the performance full, final and complete, in good faith, and involving the exercise of the fullest amount of skill, energy and industry, of all the duties properly enjoined upon them.

(c) The president of said company shall have and exercise general supervision, management and control over the affairs of said company, and the officers and employees thereof.

(d) That all moneys and funds belonging to the Ed. S. Vail Butterine Company shall be deposited in the Stockmen's Trust & Savings Bank, Chicago, Illinois, and shall be withdrawn from said bank only upon checks signed by the treasurer and countersigned by the president or the assistant treasurer of the company.

(e) That the secret formula or formulas, process or processes for the production and manufacture of butterine, and kindred products heretofore sold by the said Ed. S. Vail to said company, shall be turned over to and held by the said Walter L. Darlington as trustee for all of the stockholders of said company during the life of this contract.

### This agreement further provides that—

The said parties hereby covenant and agree that in their capacity as directors of the said Butterine Company, they will at the next regular meeting of the board of directors of said Ed. S. Vail Butterine Company vote to adopt resolutions embodying the provisions of the foregoing paragraphs designated as a, b, c, d and e, and that they will not during the life of this agreement vote to repeal, modify or change in any way said resolutions, and it is hereby understood and agreed that said resolutions so to be adopted as aforesaid, are for the protection of persons about to become stockholders in said company who are to be offered the inducement that in consideration of the purchase by

them of shares of the capital stock of said Butterine Company, said resolutions will be adopted and become permanently the policy of said Butterine Company in respect to the matters and things therein mentioned.

It is further understood and agreed by and between the parties hereto that as directors of said Butterine Company, constituting a majority thereof, they will during the life of this contract, subject only to such changes as may be mutually agreed upon, vote to elect the following as officers of said company:

> President, William H. Darlington,
> Vice President, Ed. S. Vail,
> Secretary, J. E. Anderson,
> Treasurer, L. E. Roberts,
> Asst. Treasurer, W. L. Ephlin.

The taxpayer began the manufacture of oleomargarine on July 17, 1917.

The stock issued to Vail pursuant to the resolution hereinbefore quoted and that issued for property and 100 shares of preferred stock sold on December 9, 1916, at par, with which 100 shares of common stock were given as a bonus, constituted all of the stock issued during 1916. Between January 6 and December 24, 1917, 9,980 shares of preferred stock were sold to 194 purchasers for cash at $10 a share, with which a total of 6,477 shares of common stock were given as a bonus. Practically all of this stock was sold to persons not connected with the corporation, in lots ranging from 3 shares to 500 shares. The greater number of sales were in blocks of from 10 to 50 shares. The subscribers to this stock were actuated to purchase the same by reason of their belief that the manufacture of oleomargarine would be profitable and by reason of representations made to them concerning Vail's ability, reputation, and experience in the manufacture of oleomargaine, and by the further representation that the corporation had acquired from him certain formulae and processes for its manufacture.

The earnings and losses of the corporation for the fiscal years ending June 30, 1918, to 1925, inclusive, were as follows:

| Year | Profit | Loss | Year | Profit | Loss |
|------|--------|------|------|--------|------|
| 1918 | | $24,037.86 | 1922 | | $22,235.95 |
| 1919 | $2,695.52 | | 1923 | $2,148.89 | |
| 1920 | 23,058.51 | | 1924 | 15,737.46 | |
| 1921 | | 25,372.11 | 1925 | | 4,000.00 |

The formulæ and processes paid in for stock, aside from the personal services agreed to be rendered by Edward S. Vail, had no actual cash value on October 2, 1916.

> *The deficiency is $1,847.88. Order will be entered accordingly.*